UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Sandra Gontero, | ) | CASE NO. 1:13 CV 2636 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| PNC Bank, National Association, et al., | ) | Memorandum of Opinion and Order |
| | ) | |
| Defendant. | ) | |

**Introduction**

This matter is before the Court upon defendants' Motion to Partially Dismiss Plaintiff's Complaint (Doc. 10) This case arises out of plaintiffs' former employment with defendants. For the following reasons, the motion is GRANTED.

**Facts**

Plaintiff Sandra Gontero filed this Complaint against defendants PNC Bank, National Association (PNC Bank), Thomas P. Melcher, and Albert S. Kantra in the Cuyahoga County Common Pleas Court. Defendants removed the case to this Court on the basis of federal question jurisdiction.

The Complaint generally alleges the following. Plaintiff worked for PNC Bank and its

1

predecessors from February 10, 1997 until May 1, 2013, when she was constructively discharged. From 2008 until the end of her employment, plaintiff worked for the Hawthorn banking division which provides wealth management services to PNC Bank's clients with assets in excess of $20 million.  Melcher was executive vice president and managing executive of Hawthorn and Kantra was executive vice president and managing director of Hawthorn.

Plaintiff was named as a managing director of Hawthorn and was given a larger workload than her male counterparts and insufficient support staff.   Similarly situated and/or less qualified male employees consistently received higher compensation, including, base salary, bonuses and incentives while plaintiff's compensation remained flat and/or decreased. Plaintiff expressed concern to Melcher in February 2012 regarding her compensation and was told that she was "still making a lot of money."  In August 2012, plaintiff spoke with Kantra about PNC's discriminatory conduct and he told her she was being "too emotional."

Plaintiff repeatedly complained to Melcher and Kantra about PNC's discrimination against female employees within the Hawthorn division with respect to salary, promotions, and new client assignments.  PNC then initiated efforts to supplant her.  In April 2011, PNC hired Douglas Banbury who was assigned most of plaintiff's client accounts.  Plaintiff was excluded from management activities and marginalized.  Subordinate employees disregarded plaintiff and she was prevented from disciplining them.

Plaintiff's complaints were met with increasing hostility.  Eventually, plaintiff began experiencing severe panic attacks at work and sought medical treatment.  Plaintiff's physician placed her on short-term disability leave. Defendants prohibited plaintiff from contacting clients or colleagues during her leave.  Plaintiff ultimately returned to work with restrictions to which

PNC agreed. Plaintiff continued to experience hostility and exclusion by peers and subordinates. In April 2013, plaintiff's physician advised her to continue working on a reduced hour basis indefinitely.  PNC stated that this "would not work" for the Hawthorn division.  On May 1, 2013, plaintiff was constructively discharged.

Plaintiff's Complaint sets forth eight claims.  Count One alleges gender discrimination under Title VII and the Ohio Revised Code.  Count Two alleges age discrimination under the Age Discrimination in Employment Act (ADEA) and Ohio Revised Code.  Count Three alleges retaliation under Title VII and the Ohio Revised Code.  Count Four alleges violation of the Family and Medical Leave Act (FMLA).  Counts Five alleges wrongful termination based on gender discrimination.  Count Six alleges wrongful termination based on age discrimination. Count Seven alleges wrongful termination in violation of public policy.  Count Eight alleges intentional infliction of emotional distress.

This matter is now before the Court upon defendants' Motion to Partially Dismiss Plaintiff's Complaint.

**Standard of Review**

"Dismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). We assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v. Booth Creek Management Corp.,* 2009 WL 1884445 (6th Cir. July 2, 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008) ).  In construing the complaint in the light most favorable to the non-moving party, "the court does not accept the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted factual inferences."

*Gritton v. Disponett,* 2009 WL 1505256 (6th Cir. May 27, 2009) (citing *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir.1997). "To survive a Rule 12(b)(6) motion, the nonmoving party must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level."*ABS Industries, Inc. ex rel. ABS Litigation Trust v. Fifth Third Bank,* 2009 WL 1811915 (6th Cir. June 25, 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir.2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In *Twombly*, the court held that to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.

**Discussion**

Defendants move to dismiss the ADEA and Title VII claims asserted against the individual defendants, Mechler and Kantra, contained in Counts One, Two, Three, Five, and Six; the wrongful termination in violation of public policy claim asserted in Count Seven; and the intentional infliction of emotional distress claim asserted in Count Eight.

**(a) individual liability claims**

Defendants move to dismiss the individual liability claims against Mechler and Kantra under Title VII and the ADEA pursuant to the well-established authority of *Wathen v. General Electric Co.,* 115 F.3d 400 (6th Cir.1997). Plaintiff responds by asserting that individuals may be held liable under the Ohio Revised Code. While plaintiff is correct, there is no individual liability under Title VII and the ADEA.  Therefore, claims of individual liability asserted in

4

Counts One, Two, Three, Five, and Six are dismissed as to the federal claims only.

### (b) wrongful termination in violation of public policy

Plaintiff alleges, "A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating an employee based on gender discrimination bias and/or prejudice."  (Compl. ¶ 209) The same allegation is repeated based on age discrimination and retaliation.  (*Id. ¶¶* 210, 211)

Defendants assert that the claim fails because the underlying state and federal discrimination statutes offer statutory remedies which provide complete relief.  For the following reasons, this Court agrees.

Cases within this district have concluded that claims of wrongful termination in violation of public policy[1] based on statutory employment discrimination statutes do not exist under Ohio law.  In fact, two of those recent cases involved plaintiff's counsel herein who alleged substantially identical claims to those herein. In *Morr v. Kamco Industries, Inc.,* 548 F.Supp.2d 472 (N.D. Ohio April 15, 2008), the court stated,

> Plaintiff's wrongful discharge claim fails as a matter of law because it is based entirely on her allegation that [defendant] violated the FMLA and discriminated against [plaintiff] on the basis of her sex in violation of O.R.C. § 4112. The Ohio Supreme Court has held that Ohio does not "recognize a common-law claim when remedy provisions are an essential

---

[1]  To state a claim of wrongful discharge in violation of public policy under Ohio common law, a plaintiff must show that: (1) a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law; (2) in general, dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy; (3) the plaintiff's dismissal was motivated by conduct related to the public policy; and (4) the employer did not have a justifiable legitimate business justification for the dismissal. *Braun v. Ultimate Jetcharters, Inc*., 2013 WL 623495 (N.D.Ohio February 19, 2013 (citing *Carrasco v. NOAMTC Inc*., 124 F. App'x 297, 304 (6th Cir.2004) (quoting *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 529–30, 773 N.E.2d 526 (2002)) (internal quotation marks omitted).

5

> part of the statutes on which the plaintiff depends for the public policy claim and when those remedies adequately protect society's interest by discouraging the wrongful conduct." *Leininger v. Pioneer Nat'l Latex*, 115 Ohio St.3d 311, 317(2007)... In fact, the Ohio Supreme Court has explicitly failed to recognize a cause of action for wrongful discharge when it is based on a violation of the FMLA or [age discrimination in violation of] O.R.C. § 4112...

> Under Ohio law, [plaintiff] cannot maintain a separate wrongful discharge claim because her allegations concern actions: 1) prohibited by federal and state employment law statutes and 2) for which those statutes provide adequate remedies. *See, e.g., Leininger*, *supra*, 115 Ohio St.3d at 318 ("R.C. 4112.99 provides an independent civil action to seek redress for any form of discrimination identified in the chapter.")...

Likewise, the court in *Gamble v. Nestle, USA, Inc.,* 2012 WL 3263109 (N.D. Ohio Aug. 9, 2012), concluded that a wrongful termination in violation of public policy claim based on race discrimination does not exist under Ohio law because the Ohio Supreme Court in *Leininger*, *supra*, held that the statutory remedy provisions adequately protect society's interests. So too, in *Green v. CGI Technologies and Solutions,* 911 F.Supp.2d 513 (N.D. Ohio Nov. 28, 2012), the court recognized that this claim is not cognizable because both Title VII and O.R.C. § 4112 provide adequate remedies to protect society's interests. *See also Braun v. Ultimate Jetcharters, Inc.*, 2013 WL 623495 (N.D.Ohio February 19, 2013) (Title VII and Ohio Rev. Code § 4112 provide an adequate remedy for plaintiff's wrongful termination claims.); *Graham v. Johanns*, 2008 WL 3980870 (S.D.Ohio August 21, 2008) ("Since the standards for ADEA and Chapter 4112 age discrimination claims are the same... it is unlikely, in light of *Leininger,* that Ohio courts would recognize a claim for wrongful discharge in violation of public policy based on violations of the ADEA.")

Plaintiff relies on cases which pre-date the Ohio Supreme Court decision in *Leininger*, *supra*, and fails to acknowledge those cases within this district which unanimously refuse to recognize a public policy tort based on the federal and state statutes underlying plaintiff's claim.

6

For these reasons, plaintiff's wrongful termination in violation of public policy is dismissed.

**(c) intentional infliction of emotional distress**

Count Eight alleges intentional infliction of emotional distress. It is well-settled under Ohio law that one who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. To reach the requisite level of "extreme and outrageous," the conduct must "go beyond all possible bounds of decency, such as to be regarded as atrocious and utterly intolerable in a civilized community." It must be a case in which "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Yeager v. Local Union 20*, 6 Ohio St.3d 369 (1983). "Moreover, the settled rule in Ohio is that the mere claim that a[n employment] termination was unjustified does not rise to the level of extreme and outrageous required to state a claim for intentional infliction of emotional distress." *Dirham v. Van Wert County Hosp.*, 2000 WL 621139 (N.D.Ohio March 03, 2000) (citing *Stoklosa v. Consolidated Rail Corp.*, 864 F.2d 425 (6th Cir.1988); *Francis v. Gaylord Container Corp.*, 837 F.Supp. 858 (S.D.Ohio 1998); *Uebelacker v. Cincom Systems, Inc*., 48 Ohio App.3d 268, 549 N.E.2d 1210 (1988)).

Defendants argue that this claim should be dismissed because plaintiff fails to allege facts plausibly giving rise to a finding that defendants' conduct was extreme and outrageous. Plaintiff, relying on pre-*Twombly* case law, contends that she has averred the elements of a prima facie case for the tort and has alleged in the factual section of her Complaint that defendants repeatedly allowed a subordinate employee to regularly come to work intoxicated and subject

7

plaintiff to verbal abuse without consequence, and allowed and encouraged subordinates to regularly and frequently exclude and dismiss plaintiff and her directives.

In *Gamble, supra,* plaintiff, represented by the same counsel herein, alleged a nearly identical intentional infliction of emotional distress claim arising out of her termination from employment. That court dismissed the claim finding that it was "precisely the insufficient pleading that *Twombly* and *Iqbal* intended to address." Furthermore, the court recognized that "an employee's termination, even if based upon discrimination, does not rise to the level of extreme and outrageous conduct without proof of something more." *Id.* at 4. Similarly, in *Beatty v. Progressvie Casualty Insurance Company,* 2013 WL 123675 (N.D. Ohio Jan. 9, 2013), another employment case brought by counsel herein, the court dismissed the intentional infliction of emotional distress claim while noting that "Ohio courts apply intentional infliction standards strictly in employment actions" and "employment termination alone, without something more, cannot support" such a claim.

Here, plaintiff points to her allegation that defendants repeatedly allowed a subordinate employee to regularly come to work intoxicated and subject plaintiff to verbal abuse without consequence, and allowed and encouraged subordinates to regularly and frequently exclude and dismiss plaintiff and her directives. This is insufficient to constitute conduct so extreme in degree as to go beyond all possible bounds of decency, to be regarded as atrocious, utterly tolerable, and lead an average member of the society to yell, "Outrageous!"

The intentional infliction of emotional distress claim is dismissed.

**Conclusion**

For the foregoing reasons, defendants' Motion to Partially Dismiss Plaintiff's Complaint is granted.

IT IS SO ORDERED.

                                         /s/Patricia A. Gaughan
                                        PATRICIA A. GAUGHAN
Date:   3/04/14              United States District Judge